position, the debtor shall be discharged from all personal obligation to pay his debts, beyond the stipulated sum. This clause of the law makes no provision whatever as to the displacement of liens, whether by attachment or otherwise. The basis of this adjustment is covenant. All the creditors are parties to it—the majority by their own voluntary assent, and the minority by operation of law.

But it is contended that it is to be treated as precisely equivalent to a proceeding in which the debtor is regularly adjudged to be insolvent and required to surrender all his property to his creditors, and in which the court further decides that the debtor is by misfortune and without fraud a bankrupt, and therefore entitled to a full discharge from personal liability to his creditors. As in the latter case certain attachments are by the express terms of law dissolved, so in the former, attachments in the same category are to be considered displaced without any express provision whatever to the same effect. This position does not seem to me to be logical. I should say, rather, that attachments within the four months are dissolved by the assignment, because the law provides that they shall be; and attachments in the same predicament are not displaced by a composition, because the law does not provide that they shall be so affected.

Again, have creditors with attachment liens with the four months a right to participate in the composition meeting? Judge Treat, in Re Scott [Case No. 12,519], held, upon what seems to me very solid grounds, that attaching creditors have no right to participate in and vote at the composition meeting. If so, it seems clear that such creditors should not be in any wise affected by the results arrived at by the parties to the composition. This question has been variously decided by the supreme courts of Iowa and Maryland on the one side, and Judges Treat and Lowell on the other.

It seems to me that the Iowa case is not at all conclusive upon this point, because the court expressed themselves as content to follow the decision of the supreme court of Maryland, "without entering upon examination and determination of the question." See Smith v. Engle. 44 Iowa, 265.

Turning to the case of Miller v. McKensie 43 Md. 404. and others decided by the supreme court of Maryland, one cannot but be struck with the unsatisfactory character of reasoning of the court in support of its decision. The court takes no notice whatever of the manifest distinction between the attaching creditor's claim in rem and in personam. but insists upon the proposition that the composition extinguishes the debt, and therefore discharges the attachment. With equal justice might the court say that the final discharge. which releases the bankrupt debtor from personal liability. necessarily discharges all liens upon property by attachment or otherwise. because there can be no

lien where the debt is extinguished—a proposition true enough as a general principle, but utterly fallacious when applied to the subject of liens, as recognized by the bankrupt law.

Perhaps the true answer to the argument of the Maryland court is, that the discharge or composition in bankruptcy affects rather the remedy than the debt itself. It is a defence that must be set up specially in bar of the remedy, like the statute of limitations; and it is, perhaps, not accurate to say that the discharge or composition extinguishes the debt. It seems to me that the reasonings of Judges Lowell and Treat touching this question are solid and conclusive; and, without the least disparagement to the state supreme courts. I consider those learned judges the safer guides, because, while the attention of the state courts to the bankrupt law is casual and infrequent, that enactment has necessarily been to the judges referred to a subject of constant reflection and profound study.

Bill dismissed with costs. Decree accordingly.

---

## Case No. 12,785.

### In re SHIELDS.

[1 N. B. R. 603 (Quarto, 170); [1] 15 Pittsb. Leg. J. (O. S.) 391.]

District Court, W. D. Pennsylvania. May 9. 1868.

BANKRUPTCY — EXEMPTED PROPERTY — REPORT OF ASSIGNEE—TWENTY DAYS' LIMIT.

The rule requiring the assignee to make a report of exempted property within twenty days, is to receive such a construction as to prevent injustice to the bankrupt, and it may be extended by the court and leave granted to the assignee to make a further report.

[In the matter of David Shields, a bankrupt.]

By JOHN N. PURVIANCE, Register:

In this case it appears by the report of the assignee. John W. Rohrer, Esq., that a sale was made by the sheriff of Armstrong county, of a large portion of the bankrupt's personal property. subsequent to the filing of his petition in bankruptcy; and that the proceeds of the sale of said property are in the hands of the sheriff, awaiting a decision of the court of common pleas of that county as to whether the same should be paid to the assignee of said bankrupt's effects. or to the creditors upon whose judgment it was sold. Until that question be decided, it is deemed proper that the assignee should not be required to make a final report of exempted property or be precluded from making an additional report, in case such should become necessary, so that the assignee may be able to set apart so much of the proceeds, arising from the sale of the personal property, as would secure to the bankrupt the amount al-

---

[1] [Reprinted from 1 N. B. R. 603 (Quarto, 170), by permission.]

lowed to him as exempted by the bankrupt act.

Rule 19, requiring assignees to make report to the court within twenty days after receiving the articles set off to the bankrupt by them, is to be strictly observed in all ordinary cases, but it is to receive such a construction as to prevent injustice to the bankrupt; and in cases like the present, where the property has not come into possession of the assignee, and a question, as to his right to it, is pending in court, it would seem to be a just and reasonable construction of the rule, and the only one that could give proper effect to the provisions of the fourteenth section of the bankrupt law [14 Stat. 522], that the time shall be computed from the date of the final decision of the court, so as to give twenty days after the property is adjudged to be within, or under, the control of the assignee.

In this view of the question, the register is of opinion, that, for the reasons stated by the assignee in his report (as herein substantially restated), the time for making an additional return of exempted property, as prayed for by the assignee, should be granted.

PER CURIAM. The decision of the register is approved, the time is extended, and leave granted to assignee to make further report.

---

## Case No. 12,786.

### SHIELDS v. MIDDLETON.

[2 Cranch, C. C. 205.] [1]

Circuit Court, District of Columbia. June Term, 1820.

STATUTE OF FRAUDS — DEBT OF ANOTHER — ACCEPTANCE OF ORDER.

A verbal acceptance of an order, drawn at the foot of the account of a third person against the drawer, is not a promise to pay the debt of another, within the statute of frauds.

Assumpsit, against the acceptor of Bates' bill on the defendant, which was in this form: "Washington, December, 1817. Mr. Bates, to James Shields, Dr. To 32 brls. lime, at $3 per brl., $96.00. Mr. J. S. Middleton—Sir: Please to pay the above bill and oblige. Yours, respectfully, Reuben Bates."

Mr. Caldwell, for defendant, objected that this is a promise to pay the debt of another, and that as the promise to pay was not in writing, it was void by the statute of frauds.

But THE COURT (nem. con.) instructed the jury that this order was a bill of exchange, that the defendant's promise to pay it was equivalent to an acceptance, and that such an acceptance was not within the statute.

---

SHIELDS (MOORE v.). See Case No. 9,775.

SHIELDS (ROOT v.). See Case No. 12,038.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

## Case No. 12,787.

SHIMER v. HUBER et al.

[19 N. B. R. 414; 14 Phila. 402; 36 Leg. Int. 339; 8 Reporter, 393.] [1]

Circuit Court, E. D. Pennsylvania. Aug. 15, 1879.

PARTNERSHIP—TRANSFER TO CO-PARTNERS—CREDITORS—BANKRUPTCY—EXECUTION.

1. In a partnership the transfer by one partner of his interest to his co-partner, as against firm creditors, is a question of good faith. If the transaction is honest, for the purpose stated in the agreement, it does so transfer the interest as it purports to do, and the firm creditors having no lien on the property, or equity in respect thereto, independent of the partners, cannot complain

2. Executions issued on judgments, the warrants for which were signed and delivered a year before a petition in bankruptcy filed, are valid; and the hold on the property under them is good, unless the debtor actively interfered to have the seizures made.

On April 30, 1877, a petition on the part of firm creditors of the firm of Huber & Mohr was filed in the district court for the Eastern district of Pennsylvania, on which they were adjudged bankrupts. On April 24, 1877, three executions had been issued against C. Lewis Huber, one of the members of this firm, out of the court of common pleas of Lehigh county. One by Walter P. Huber, guardian of Chas. T. Ritter, for $2,000, dated April 14, 1874, and entered of record April 24, 1877; one by Rebecca Wagner, dated April 1, 1874, entered of record April 24, 1877, for $3,879; and one by Milton Cooper, dated December 7, 1875, entered of record April 24th, 1877, for $1,500. There was also another execution issued by the Coopersburg Savings Bank on April 28, 1877, on a judgment note dated March 29, 1877, and entered of record in the court of common pleas of Lehigh county, April 2, 1877. The last judgment was against C. Lewis Huber and Thomas Mohr. On April 30, 1877, this bill was filed, praying for an injunction against these execution creditors and against the sheriff of Lehigh county. The Coopersburg Savings Bank was brought in on a subpœna subsequently issued on application of the plaintiffs. Walter P. Huber is a brother, Mrs. Rebecca Wagner a sister, and Milton Cooper the father-in-law of C. Lewis Huber.

Before the formation of this partnership, C. Lewis Huber was in partnership with C. Wilson Dech and T. J. Kichline, trading in the firm name of Huber, Dech & Kichline. They carried on a boot and shoe factory at Allentown, Pa. About the 1st of June, 1876, the firm of Huber, Dech & Kichline was dissolved. The stock was then valued at about $20,000. Thomas Mohr, one of the bankrupts, then took a half interest in the business, and C. Lewis Huber the other half, and they entered into a co-partnership, trading in the firm name of Huber & Mohr. It

[1] [Reprinted from 19 N. B. R. 414, by permission. 8 Reporter, 393, contains only a partial report.]